GONZALO TORRES, Plaintiff and Appellant, v. HEIRS OF GE-NARO CAUTIÑO INSUA, ETC., Defendants and Appellees.

No. 9861. Argued May 4, 1949.—Decided December 9, 1949.

Santiago Polanco Abréu for appellant. R. Rivera Zayas, G. Rivera Cestero and Milton F. Rúa, for appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Genaro Cautiño Insua contracted marriage with María Luisa Monserrate Bruno on July 16, 1905, and continued

married to her until his death on May 1, 1946. Three months after his death, that is, on August 8, 1946, Gonzalo Torres filed in the District Court of Guayama a complaint of filiation, claim of inheritance and other relief, against the Heirs of Genaro Cautiño Insua and others. At defendant's request the court dismissed the complaint on the ground that the first cause of action had prescribed and that the others lacked sufficient facts, but on reconsideration the court let the original complaint stand for the sole purpose that the plaintiff prove, if he could, that he has a right to bear his alleged father's surname, pursuant to Act No. 229 of May 12, 1942, as amended by Act No. 243 of May 12, 1945.

In the first cause of action the plaintiff alleged that "about 1908, 1909 and 1910 Genaro Cautiño Insúa and Dolores Torres sustained sexual relations in the town of Guayama, Puerto Rico, as a result of which the plaintiff herein, Gonzalo Torres, was born on January 10, 1909" and that "during all the time that elapsed between plaintiff's conception and birth and until Genaro Cautiño Insua died, the latter treated the plaintiff, publicly and privately as his son; that he used to call him 'son' in his conversations and that he took care of his maintenance and gave him the love and care of a father," and as a consequence, he asked to be declared "an acknowledged illegitimate child or acknowledged natural child of Genaro Cautiño Insua with all the rights inherent under the law."

For the purpose of the motion to dismiss, the defendants joined a certificate of the marriage of Genaro Cautiño Insua celebrated on July 16, 1905, and this fact, as well as those previously set forth, were accepted as true by the parties.

▮ The basic question involved in this case is whether the action of filiation of the plaintiff, born under the regime of the Revised Civil Code of 1902, should be governed, as to its duration, by § 199 of said Code, or by § 194 of Act No. 73 of March 9, 1911, (today § 126 of the Civil Code, 1930 ed.).

Section 199 of the Revised Civil Code of 1902 provided as follows:

"An action to claim filiation may be filed at any time within two years after the child shall become of age, and it shall be transmitted to his heirs, if he should die during his minority, or in a state of lunacy. In these cases heirs shall have five years during which to enter an action."

The action of filiation referred to in this Section involved all of the cases provided by § 198 of the same Code to the effect that: "The filiation of children shall be proved by the certificate of the birth issued by the civil registry, by the possession of the status of filiation, or by any other legal means." That is to say, the action of filiation of legitimate and illegitimate children, and this latter category, involved those who, under the Spanish Civil Code, in force since 1889 until 1902, had the status of natural children, as well as the adulterine children [1] (which is plaintiff's case), could be exercised even two years after the child became of age.

However, in 1911, when Act No. 73 was approved, the Legislature expressly repealed §§ 198 and 199, *supra*, and enacted §§ 193 and 194 which, in their pertinent part, provide:

"Sec. 193.—Natural children are those born out of wedlock, from parents who, at the moment when such children were conceived or were born could have intermarried with or without dispensation. . . ."

"Sec. 194.—The action for the recognition of natural children, can only be established during the life of the presumptive parents, and a year beyond their death. . ."

That is, the Legislative Assembly again reinstated the concept of natural child of the Spanish Civil Code, which

---

[1] Section 187 of the Revised Civil Code of 1902 provided:

"Illegitimate children may be recognized in any way by the father and the mother conjointly, or by either of them."

This Section made no distinction whatever among illegitimate children.

concept has prevailed up to the approval of Act No. 229 of 1942, as amended by Act No. 243 of 1945, *supra*.

When § 199, *supra*, was repealed in 1911, the Legislature did not provide any period of limitation for the action of filiation of illegitimate children born under the Revised Civil Code of 1902. It confined itself to provide the period of limitation for the actions of acknowledgment of those children who had the status of natural children.

The plaintiff, who was born in 1909, attained his majority in 1930. Under § 199, *supra*, had it not been repealed, his action of filiation would have subsisted until 1932.

Appellant contends that since § 199 of the Code of 1902, *supra*, was repealed and substituted by § 194 in 1911, his action was comparable to that of a natural child, inasmuch as under the Revised Civil Code of 1902 there was no distinction whatever among illegitimate children. The latter contention is true but the former is not necessarily so. On the contrary, the legislative intent as expressed in Act No. 73 of 1911, was precisely to reestablish the historical differentiation between the natural child and the other illegitimate children, the first being that born from parents who, at the moment when such child was conceived, could have intermarried with or without dispensation. Once this distinction is established anew, there is nothing in the Act of 1911 which may be construed in the sense that it was the lawmaker's intention to fix the same period of prescription to the actions of filiation of the illegitimate children of the Revised Civil Code of 1902. Ever since *Lucero et al.* v. *Heirs of Vilá*, 17 P.R.R. 141, was decided in 1911, we rejected appellant's argument, precisely in construing the scope of the act referring to inheritance, approved March 9, 1905, and by virtue of which, notwithstanding the provisions of the Revised Civil Code of 1902 in regard to all classes of illegitimate children, only the hereditary portion in the testate succession was recognized in favor of the natural children legally acknowledged, and we said, at p. 155:

"The grammatical and legal concept or idea of 'natural child' is more restricted than that of 'illegitimate child,' and we cannot admit that both have the same extension and scope. Had it been the purpose of the legislature to recognize ·hereditary rights in favor of illegitimate children, as the latter are defined in the Revised Civil Code, it would have made use of the locution 'illegitimate children,' and not that of 'natural children.' Acting as it did, it has recognized hereditary rights in favor of natural children legally acknowledged, as defined in the old Civil Code. . . ."

In like manner, the lower court did not err in deciding that when § 199 of the Revised Civil Code of 1902 was repealed and § 194 was enacted by Act No. 73 of 1911, *supra*, the period of prescription for the action of filiation of natural children, under the new Act is not applicable to the illegitimate children of the previous Act "inasmuch as if that would have been the legislative intent, the lawmaker would have made use of the locution 'illegitimate' instead of the locution 'natural children.' "

In our judgment the lower court did not err either in deciding that since the action of filiation is of a personal character, —*Orama et al.* v. *Oyanguren*, 19 P.R.R. 788; *Gastón* v. *Heirs of Franceschi*, 43 P.R.R. 285—and the limitation period of which in a case of illegitimate filiation was not fixed by the Legislature in enacting § 194, *supra*, said period is the one provided by § 1865 of the Revised Civil Code of 1902 (§ 1864 of our Civil Code, 1930 ed.), to the effect that personal actions for which no special term of prescription is fixed, prescribe after fifteen years, in regard to § 40 of the Code of Civil Procedure which provides that "If a person entitled to bring an action, other than for the recovery of real property, be at the time the cause of action accrued, either: 1. Within the age of majority. . . The time of such disability is not a part of the time limited for the commencement of the action." That is to say, that plaintiff's cause of action having arisen on January 10, 1909 and plaintiff hav-

ing attained his majority on January 10, 1930, the fifteen-year period he had to institute his personal action of filiation, was due on January 10, 1945 and as the complaint was filed on August 8, 1946, the action had prescribed.

 The plaintiff is not being deprived of any substantive right, that is, whether under § 187 of the Revised Civil Code of 1902, *supra*, he had a right to be acknowledged, inasmuch as filiation is governed by the law in force at the date of the birth. *Charres* v. *Arroyo*, 16 P.R.R. 777; *Méndez* v. *Martínez*, 21 P.R.R. 238; *Mercado* v. *Heirs of Mangual*, 35 P.R.R. 388. What is raised in the case at bar is a question of prescription, that is to say, of the duration of the action to assert said substantive right. Notwithstanding appellant's able discussion to the effect that no subsequent legislation or judicial interpretation may deprive him of his acknowledgment, it is a firmly established doctrine that the actions of filiation prescribe by the lapse of time specified by law to bring them. *Rijos* v. *Folgueras et al.*, 16 P.R.R. 593, affirmed in *Córdova* v. *Folgueras*, 227 U. S. 375; *Calaf et al.* v. *Calaf*, 17 P.R.R. 185 affirmed in 232 U. S. 371; *Gastón* v. *Heirs of Franceschi*, *supra*, and cases cited at p. 292; *Morales* v. *Federal Land Bank*, 56 P.R.R. 825.

In the *Calaf* case, *supra*, at p. 203, the distinction was clearly set forth between the necessary and essential elements of filiation and acknowledgment and the duration of the action to recover judicially said acknowledgment. As to the latter it was stated that it:

". . . is an incident which may be changed or modified by the legislature at any time under certain conditions so long as no one who has or claims to have that right is prevented in absolute terms from prosecuting an action to secure his acknowledgment.

---

[2] The same decision was reached in *Córdova* v. *Folgueras*, 227 U. S. 375, citing from the headnote: "It is not an interference with vested rights to prescribe the mode of procedure, or the time within which to enforce them, provided reasonable time be given therefor."

"If a reasonable time [2] is granted for the exercise of that action before the right is denied, there can be no reason for complaint."

And at p. 204 it was stated as follows:

"But even admitting that neither the provisions of the Civil Code of Spain nor those of the Revised Civil Code governing the duration of actions for acknowledgment are applicable to the present case, there would still be Law 63 of Toro, *which provides that personal actions shall prescribe* in 20 years, *and the action for acknowledgment of filiation partakes of the nature of personal actions.*" (Italics ours.)

Under the law in force when plaintiff was born he acquired a right and was entitled to a statutory period within which he could file an action to establish said right in court. Subsequently the lawmaker repealed said specific term while the plaintiff was a minor, but it did not deprive him of his action, since he granted him the fifteen-year supplemental period specified in the code to institute personal actions, which is more than reasonable, since it extended by thirteen years, the original period which the plaintiff had under § 199, *supra.*

We cannot accept appellant's theory in the sense that the illegitimate child under the Civil Code from 1902 until 1911, is equivalent to the natural child of the Spanish Civil Code and the natural child under the amendment of Act No. 73 of 1911. The concept "illegitimate child" of the years 1902 to 1911, as we have previously stated, included, inasmuch as no differentiation whatever had been made in 1902, all classes of illegitimate children; however, the concept "natural child" of the Spanish Civil Code and of our Code subsequent to Act No. 73 of 1911 and up to the approval of Act No. 229 of 1942 as amended by Act No. 243 of 1945, does not include, nor is it equivalent to the other illegitimate children. *Lucero et al.* v. *Heirs of Vilá, supra; Celis Alquier* v. *Méndez,* 18 P.R.R. 86; *Ortiz et al.* v. *Rivera et al.,* 26

P.R.R. 294. For the same reason, the period of prescription granted by § 194 for the action of filiation of the natural child, without mentioning the illegitimate child who was not included either in said concept under § 193, *supra*, could not be made extensive to the latter.

We consider that the grounds set forth in *Ortiz* v. *Stella*, 47 P.R.R. 111, cited by the appellant, wherein it was decided that a child born under the Revised Civil Code and whose right to exercise his action of filiation had not prescribed in 1911 when § 199 was repealed and § 194 was approved, can bring the action of filiation within one year of the death of his alleged father, are erroneous, even though the conclusion reached therein to the effect that the action had not prescribed was correct, for it falls under the rule established herein. Let us see.

According to the facts set forth in said opinion, Mateo Ortiz was born on *November 23, 1902* and he filed suit against the heirs of his presumptive father—who had died December 27, 1929—on *February 18, 1930*. We see, therefore, that Ortiz came of age on November 23, 1923 and that since he had fifteen years to exercise his action, the latter would not prescribe until the year 1938, and since it was begun on February 18, 1930, it had not prescribed. The opinion in the *Ortiz* case shows, by its reasonings, that it was not decided on the ground that he was a natural child, notwithstanding that in the complaint it was alleged that his parents were unmarried, but mainly by applying § 1839 of the Civil Code [3] and Rule 4 of the Transitory Provisions for the execution of

---

[3] Section 1839 provides the following:

"Prescriptions, which began to run before the publication of this Code, shall be governed by the prior laws; but if, after this Code became operative, all the time required in the same for prescription has elapsed, it shall be effectual, even if according to said prior laws a longer period of time may be required."

the Spanish Civil Code.[4] But the fact is that Ortiz having been born on November 23, 1902, the Civil Code of 1902 having been in force since the 1st of July of said year, his right to acknowledgment accrued, not before as required by Rule 4, but after said Code went into effect and the prescription of his action had not begun to run before the publication of the Code, as required by § 1839, but afterwards, and therefore there was no reason to apply either the Section or the rule.

In *Guadalupe v. González*, 34 P.R.R. 643, cited with approval in *Ortiz v. Stella, supra,*[5] it was not proved, as erroneously stated at pp. 114–5, that the plaintiff had been born under the provisions of § 199, *supra*, for the fact which was deemed proved in *Guadalupe v. González, supra*, pp. 646–7, was that plaintiff was born on January 3, 1901, that is, before § 199 of the Revised Civil Code took effect, and this being so, Rule 4 of the Transitory Provisions was applicable, as was decided in that case.

Since our Civil Code contains § 1864, *supra*, which fixes the term of fifteen years for the prescription of personal actions, like filiation, for which no special term of prescription is fixed, when § 199, *supra*, was repealed, the action of acknowledgment of illegitimate children referred to in said Section, was left without a special term of prescription and consequently the supplemental term fixed in § 1864 is ap-

---

[4] Rule 4 of the Transitory Provisions reads thus:

"Actions and rights which accrued before this code became operative, but which have not been enforced, shall continue to subsist with the same force and effect given them by the prior law, but shall be subject, with respect to their exercise, duration, and the procedure for enforcing them, to the provisions of this code.

"If official proceedings for the enforcement of the right or action, commenced under the provisions of the prior law should be pending and such proceedings should be different from those prescribed by this code the parties may elect to make use of either procedure."

[5] When stating the facts of *Guadalupe v. González*, 34 P.R.R. 643, at p. 114 of *Ortiz v. Stella*, another error was committed in saying that the action in the former case was begun November 10, *1931*, when in fact the correct date is November 10, *1921*. See said case at p. 643.

plicable thereto. There was no need either in the *Ortiz* case, *supra*, or in the present case, of applying § 1839 and Rule 4, *supra*.

In our judgment the lower court did not err in deciding that the first cause of action has prescribed nor did it err in dismissing the other causes of action for claim of inheritance, nullity of the institution of heirs contained in the will of Genaro Cautiño Insua on the ground of the preterition of the plaintiff, nullity of legacies and recovery of fruits, for appellant himself admits in his brief that "the subsistence of these three causes of action depends on the fact that the first cause of action has not prescribed."

.The judgment will be affirmed.